**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| ADEM ARSLANI,<br><br>Plaintiff,<br><br>v.<br><br>ABRIDGE AI, INC. and PAUL RICCI,<br><br>Defendants. | Case No. 3:26-cv-50118<br><br>Honorable Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adem Arslani, proceeding *pro se*, alleges that Defendants Abridge AI, Inc. and Paul Ricci misappropriated his methodologies for clinical documentation systems. Arslani brings claims for misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 *et seq*. (Count I), and unjust enrichment (Count II). He seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Count III), as well as monetary and injunctive relief. Defendants now move for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. For the reasons stated below, Defendants' Rule 12(b)(2) motion [27] is granted as to Ricci but denied as to Abridge, and Abridge's Rule 12(b)(6) motion [27] is granted. Arslani's request for jurisdictional discovery is denied, but his request for leave to file a second amended complaint is granted.

## I. Background[1]

Arslani's First Amended Complaint details how Abridge AI, Inc. acquired his trade secrets and subsequently deployed them for commercial use across the nation.

In the mid-1990s, Adem Arslani began integrating audio and video communication technology into patient care. Dkt. 7 at ¶ 15. Over more than two decades, he developed systems that processed verbal exchanges between patients and physicians to automatically generate electronic medical records. *Id.* at ¶ 21.

Defendant Paul Ricci resides in California and has never lived or worked in Illinois. Dkt. 27-3 at ¶¶ 2, 4. He was CEO of Nuance Communications, Inc. from 2000 to 2018. Dkt. 7 at ¶ 25. During that period, Nuance repeatedly selected Arslani to test its products, giving Nuance direct access to Arslani's methodologies and frameworks. *Id.* at ¶ 18. Nuance was "under confidentiality obligations" with respect to this information. *Id.* Arslani also published an article "publicly document[ing] these concepts" around that time. *Id.* at ¶ 21.

During this same period, Ricci attended healthcare conferences at Nuance where Arslani presented his work on speech recognition systems. *Id.* Around 2010 or 2011, Nuance collaborated with the University of Pittsburgh Medical Center (UPMC) to develop clinical speech recognition systems. *Id.* ¶ 26. These systems resembled Arslani's work. *Id.* at ¶ 26.

---

[1] These allegations are taken from the First Amended Complaint [7] and related documents properly before the Court. The Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Defendant Abridge AI, Inc. is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. *Id.* at ¶ 13. Abridge was founded by a UPMC cardiologist in 2018, so Arslani's methodologies became part of the company's institutional knowledge base. *Id.* at ¶¶ 29, 30. Ricci now serves as an advisor to Lightspeed Venture Partners, the entity that co-led Abridge's Series C funding round. *Id.* at ¶ 39. Through this role, Ricci is a strategic advocate for Abridge and has supported, guided, and promoted its development and commercialization of clinical documentation technologies. *Id.* at ¶ 39.

In 2018, Nuance executive Dr. Reid Conant incorporated Clinical AI Solutions, Inc. (CAIS) and recruited Arslani for employment. *Id.* at ¶ 31. Within days of Arslani joining CAIS, Conant acquired and transferred Arslani's methodologies to other Nuance executives. *Id.* at ¶ 34. Conant was later hired by Abridge in 2021, providing Abridge with further access to Arslani's work. *Id.* at ¶ 36.

Abridge's current AI platforms operate similarly to Arslani's systems. *Id.* at ¶ 45. These similarities, along with Conant's employment, allowed Arslani to infer that Abridge had acquired and subsequently deployed his methodologies. *Id.* at ¶ 47. But it wasn't until September 2025 when Arslani discovered that Abridge had used his methodologies, in part because the systems contain "back-end architecture not visible through public interfaces." *Id.* at ¶ 53. Arslani's methodologies have been deployed at over forty healthcare institutions across the country, generating millions of dollars in revenue. *Id.* at ¶ 35.

Arslani brought this action seeking monetary, declaratory, and injunctive relief against Abridge and Ricci. Abridge and Ricci now move to dismiss under Rule 12(b)(2) and Rule 12(b)(6). In response to Defendants' Rule 12(b)(2) motion to dismiss, Arslani submits exhibits containing press releases that detail Abridge's commercial deployments of AI platforms in Illinois. Dkt. 30-1, Exhibits C, D, and E.

## II. Personal Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the court's personal jurisdiction over a defendant. A plaintiff is not required to allege facts establishing personal jurisdiction in his complaint. *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). But once a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). When a court decides a Rule 12(b)(2) motion without an evidentiary hearing, a plaintiff need only make a *prima facie* or colorable showing of personal jurisdiction over the defendants. *North v. Ubiquity, Inc.*, 72 F.4th 221, 224–25 (7th Cir. 2023).

In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, courts accept the plaintiff's asserted facts as true and resolve any factual disputes in his favor. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). If, like in this case, the defendants submit affidavits or other outside materials opposing the court's exercise of personal jurisdiction, the plaintiff must also submit affirmative evidence supporting the court's exercise of jurisdiction.

*Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Unrefuted assertions in the parties' materials are accepted as true, but courts must resolve conflicting assertions in the plaintiff's favor. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Illinois law determines the boundary of this Court's ability to exercise personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). In Illinois, personal jurisdiction is limited only by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 735 Ill. Comp. Stat. 5/2–209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). So, the Court will only consider whether the exercise of personal jurisdiction comports with federal constitutional principles.

Courts recognize two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). The Court addresses whether either type of jurisdiction exists over Defendants in turn.

**a. General Jurisdiction**

A court may exercise general jurisdiction over a defendant when his affiliations with the forum state are "so constant and pervasive" that the defendant is considered "at home" in the forum state. *Daimler AG*, 571 U.S. at 122. A court may hear any and all claims against a defendant who's subject to general jurisdiction. *Id.*

Generally, a corporate defendant is considered "at home" in its state of incorporation and in its principal place of business. *Id.* at 137. Only in an

"exceptional case" will a corporate defendant's operations in another forum be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 137.

In this case, the Court may not exercise general jurisdiction over Defendants because neither is at home in Illinois. Abridge is incorporated in Delaware with its principal place of business in Pittsburgh, Pennsylvania. Dkt. 7 at ¶ 13. Ricci resides in California and has never lived or worked in Illinois. *Id.* at ¶ 14; Dkt. 27-3 at ¶ 4. Further, Arslani doesn't contend—nor do any facts suggest—that this is an "exceptional case" where Abridge's contacts with Illinois are "so substantial" as to render it at home in Illinois. *Daimler AG*, 571 U.S. at 139 n.19. So, Arslani has failed to establish a colorable showing that this Court can exercise general jurisdiction over Defendants.

**b. Specific Jurisdiction**

Specific jurisdiction, by contrast, requires the suit to arise from or relate to the defendant's contacts with the forum state. *Bristol-Myers Squibb*, 582 U.S. at 262. The focus is on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In cases involving intentional torts, the jurisdictional evidence must suggest that "the conduct underlying the claims was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702.

A court can exercise specific jurisdiction over a defendant only if three requirements are met: (1) purposeful availment—the defendant must have

purposefully directed its activities at the forum state or purposefully sought the privilege of conducting business in the forum state; (2) relatedness—the plaintiff's alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *B.D. ex rel. Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024).

To establish purposeful availment, the plaintiff must show that the defendants have "certain minimum contacts" with the forum state. *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). It's the defendant's contacts with the forum that matter, not the plaintiff's. *Walden*, 571 U.S. at 284. Those contacts "must be with the forum state, not just with individuals within the state." *NBA Props.*, 46 F.4th at 621. Contacts that are "random, fortuitous, or attenuated" are insufficient, as they must be such that a defendant would "reasonably anticipate being haled into court" there. *Burger King v. Rudzewicz*, 471 U.S. 462, 486 (1985). Instead, the contacts "must demonstrate that the defendant purposively availed itself of the laws of that jurisdiction by availing itself of the privilege of doing business in the state or by purposively directing activities at the state." *NBA Props.*, 46 F.4th at 621.

Next, for relatedness, a plaintiff must establish that the defendant's minimum contacts with the forum state are "suit-related." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020). If there is no such connection between the defendant's contacts and the action, specific jurisdiction is lacking

regardless of the extent of the defendant's contacts with the state. *Bristol-Myers Squibb*, 582 U.S. at 264. "The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). But a strict causal relationship between the relevant contacts and the action is not required. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021). Instead, a plaintiff's injuries must only arise out of or relate to the defendant's contacts with the forum. *Id.*

Lastly, for fairness, courts consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987); *Purdue Rsch. Found. v. Sanofi-Synthelabo S.A.*, 338 F.3d 773, 781 (7th Cir. 2003). Courts should also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co.*, 480 U.S. at 113 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Courts must assess personal jurisdiction as to each defendant individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Accordingly, the Court's analysis of these principles with respect to Abridge and Ricci follows.

***i. Abridge***

Arslani has made a *prima facie* showing that the Court has specific personal jurisdiction over Abridge.

Along with his memorandum opposing this motion, Arslani submitted exhibits that detail Abridge's commercial deployments of AI platforms at three different Illinois medical centers. Dkt. 30-1, Exhibits C, D, and E. He argues that these deployments show that Abridge deliberately targeted Illinois' market, which amounts to purposeful availment. The Court agrees with this reasoning.

An out-of-state defendant has minimum contacts with the forum state when it engages in deliberate activity with the forum state, such as transacting business within the state. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010). By deploying AI platforms at medical centers in Illinois, Abridge directed its activities at Illinois while receiving the benefits of its market and the protection of its laws. *See Ford Motor Co.*, 592 U.S. at 367. These deployments were not "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 486. Rather, they were the result of a deliberate choice to target Illinois' market and would cause a reasonable person to anticipate being hauled into an Illinois court. Thus, Abridge's deployments constitute minimum contacts sufficient to satisfy due process.

Moving to relatedness, Abridge correctly observes that merely having minimum contacts with the forum isn't enough to establish personal jurisdiction, as Arslani's claim must also "arise out of or relate to" Abridge's contacts. *Bristol-Myers Squibb*, 582 U.S. at 262. It argues that Arslani's DTSA claim doesn't "arise out of or

relate to" its deployments of AI platforms in Illinois, and therefore these contacts cannot serve as the basis for personal jurisdiction. Dkt. 34 at 4. Conversely, Arslani contends that Abridge's contacts with Illinois relate to his DTSA claim because those contacts—deployments of AI platforms built on his methodologies—gave rise to his injuries under the DTSA. Dkt. 29 at 4.

Courts considering whether to exercise personal jurisdiction over out-of-state defendants in trade secret cases focus on whether the alleged misappropriation was sufficiently connected to the forum state. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577 (7th Cir. 2020) ("Because the defendants themselves did not acquire, disclose, or use J.S.T.'s trade secrets in Illinois, the link between the Illinois sales and their misappropriation of J.S.T.'s trade secrets is attenuated."); *Suncast Corp. v. Thurman*, No. 25-CV-9965, 2025 U.S. Dist. LEXIS 166700, at *11 (N.D. Ill. Aug. 27, 2025) ("To demonstrate that Thurman is subject to personal jurisdiction in this forum with respect to its misappropriation of trade secret claim, Suncast must show that Thurman knowingly acquired, disclosed, or used Suncast's trade secrets in Illinois."); *Granutech-Saturn Sys. Corp. of Am. v. Wayne Trail Techs., Inc.*, No. 09-CV-529, 2009 U.S. Dist. LEXIS 70802, at *13 (N.D. Tex. Aug. 12, 2009) ("Where trade secrets owned by a forum resident are misappropriated outside the state, and misused in the state, specific personal jurisdiction exists within the forum.").

In this case, Arslani's DTSA claim is based on allegations that Abridge improperly acquired his methodologies and subsequently used and continues to use

them in its AI platforms, which are deployed throughout the nation. Abridge contends that Arslani's claim "arise[s] from a theory that supposedly took shape years before Abridge had any alleged presence in Illinois" and thus, any contacts it had with Illinois are unrelated to this action. Dkt. 34 at 4. In making this point, Abridge seems to argue that its deployments of AI platforms in Illinois are not the basis for Arslani's DTSA claims, and therefore cannot support the exercise personal jurisdiction over it.

Under Abridge's theory, Arslani's DTSA claims are based solely on Abridge's initial acquisition of Arslani's alleged trade secrets—an acquisition that had essentially nothing to do with Illinois—rather than Abridge's subsequent deployment of Arslani's alleged trade secrets in Illinois. This argument is misguided. Under the DTSA, trade-secret misappropriation doesn't begin and end with the defendant's initial acquisition of the plaintiff's trade secrets. Instead, liability also encompasses any ongoing disclosure or use of the trade secrets by the defendant. *Motorola Solutions, Inc. v. Hytera Commc'ns. Corp. Ltd.*, 108 F.4th 458, 487 (7th Cir. 2024); 18 U.S.C. § 1839(5)(B). So, Abridge's subsequent use of Arslani's alleged trade secrets in Illinois is just as related to his DTSA claim as Abridge's initial acquisition.

Abridge also contends that, because the First Amended Complaint fails to allege that the AI platforms it deployed in Illinois incorporated Arslani's methodologies, Arslani has failed to establish that these contacts are related to his DTSA claims. Dkt. 34 at 4. Indeed, the First Amended Complaint says nothing

about Abridge's deployments of AI platforms in Illinois. *See* dkt. 7. But this omission is unsurprising because, as previously mentioned, a plaintiff is not required to plead factual allegations supporting personal jurisdiction. *Steel Warehouse*, 154 F.3d at 715. And although no facts relating to Abridge's Illinois contacts appear in the First Amended Complaint, Arslani's memorandum opposing this motion explicitly states that Abridge's Illinois deployments included platforms that were built on his methodologies. Dkt. 29 at 4. Further, the First Amended Complaint does allege that Abridge's AI platforms incorporate Arslani's methodologies. Dkt. 7 at ¶¶ 7, 30, 45–47, 57. These allegations together with Arslani's unrefuted exhibits detailing Abridge's Illinois deployments allow the Court to infer at this stage that those deployments included Arslani's alleged trade secrets.

Therefore, Arslani's injuries under the DTSA—i.e. "the continued, uncompensated exploitation" of his trade secrets—are directly related to Abridge's deployments of its AI platform in Illinois. Dkt. 29 at 4.

To be sure, the allegation that Arslani suffered injuries within the forum state is insufficient to establish personal jurisdiction over Abridge. *Walden*, 571 U.S. at 290. Instead, it's Abridge's alleged deployments of Arslani's trade secrets in Illinois that allow this Court to exercise personal jurisdiction over Abridge. *See My Fav Elecs., Inc. v. Currie*, No. 24-C-1959, 2025 U.S. Dist. LEXIS 121505, at *15 (N.D. Ill. June 26, 2025) (exercising personal jurisdiction over defendant when plaintiff's injury arose from defendant's "resultant use of the trade secrets in Illinois

(among other places)"). Abridge's activities in Illinois, not just the effects that Arslani suffered in Illinois, are inherently related to Arslani's DTSA claim.

Lastly, exercising personal jurisdiction over Abridge doesn't offend traditional notions of fair play and substantial justice. Although Abridge doesn't have much of a physical presence in Illinois, it targeted some of the largest medical centers in Illinois as the deployment site for its AI platforms. Once a plaintiff establishes that a defendant has minimum contacts with the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In this case, there's no unfairness in requiring Abridge to defend a lawsuit in the state where, through the very activity giving rise to the suit, it continues to enjoy economic benefits. *See uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 433 (7th Cir. 2010). Any burden that defending a lawsuit in Illinois places on Abridge is minimal in light of its contacts with the state. *Id.*

What's more, Illinois has a "strong interest" in providing a forum for its residents to seek redress for injuries suffered within the state inflicted by out-of-state actors. *Tamburo*, 601 F.3d at 709. Traveling to Illinois may be inconvenient for Abridge. But dismissing the action isn't an appropriate way to resolve inconvenience when the state has a strong interest in providing a forum for the underlying dispute.

In short, Abridge hasn't identified any serious burdens that overcome Arslani's interest in litigating in the forum of his choice and Illinois' interest in protecting the trade secrets of its residents.

Abridge purposefully availed itself of the privilege of conducting business in Illinois, and therefore has sufficient minimum contacts with the forum state to establish personal jurisdiction. Those contacts are related to Arslani's claims, and exercising personal jurisdiction over Abridge doesn't offend traditional notions of fair play and substantial justice. Accordingly, Abridge's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied.

***ii. Ricci***

Ricci also moves to dismiss for lack of personal jurisdiction, contending that he has no relevant contacts with Illinois. Indeed, Ricci has never lived or worked in Illinois, has no presence or business in Illinois, and hasn't traveled to the state since 2020. Dkt. 27-3 at ¶¶ 4–6. Arslani responds that personal jurisdiction exists over Ricci because the technological frameworks developed through the "Ricci-led Nuance-UPMC collaboration" were built on his methodologies—methodologies that originated in Illinois. Dkt. 29 at 5; Dkt. 7 at ¶ 30. So, in Arslani's view, personal jurisdiction exists over Ricci because he helped to misappropriate trade secrets that originated in Illinois.

But a court doesn't have personal jurisdiction over a defendant merely because the defendant misappropriated trade secrets that the plaintiff initially developed in the forum state. *Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the

only link between the defendant and the forum."). Similarly, the fact that Arslani felt the effect of the alleged misappropriation in Illinois isn't a sufficient basis for personal jurisdiction. *Id.* at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Indeed, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* At this stage, Arslani hasn't established that Ricci connected himself to Illinois in any significant way.

The Court rejects Arslani's argument that Ricci subjected himself to personal jurisdiction in this Court by helping acquire alleged trade secrets that were created in Illinois. Because Ricci doesn't have minimum contacts with Illinois and Arslani doesn't contend that the contacts of any other entity should be attributed to Ricci,[2] Arslani has failed to make a *prima facie* showing of personal jurisdiction over Ricci.

The parties devote most of their briefing to whether Illinois' fiduciary shield doctrine bars the exercise of jurisdiction over him. Dkt. 29 at 5–6; Dkt. 34 at 5. But

---

[2] The Seventh Circuit recognizes that one entity's contacts with the forum state can sometimes be attributed to another based on the relationship between the two, such as when an agency relationship exists. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021); *see also Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (agency relationship exists if the principal has "the right to control the manner and method in which work is carried out" by the agent). In this case, Arslani doesn't contend that Abridge's contacts should be attributed to Ricci. Nor does he argue that Abridge was acting as Ricci's agent when it deployed AI platforms in Illinois. To the contrary, he alleges that through his role at Lightspeed Venture Partners, "Ricci is a strategic advocate for Abridge, and, upon information and belief, has actively supported, guided, and promoted Abridge's development, commercialization, and market positioning of ambient client documentation technologies." Dkt. 7 at ¶ 39. Given that Ricci merely "guided" and "supported" Abridge's work, his role was only passive and Abridge retained control over its work. So, Abridge's contacts cannot be attributed to Ricci under an agency theory of personal jurisdiction.

because Arslani has failed to make a *prima facie* showing that Ricci is subject to the Court's personal jurisdiction in the first place, this issue is moot.

Ultimately, Arslani fails to show that Ricci had sufficient minimum contacts with Illinois such that exercising personal jurisdiction over him would comply with Due Process. Ricci's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted.

**c. Jurisdictional Discovery**

Arslani requests that the Court permit jurisdictional discovery if it doesn't find a basis to exercise personal jurisdiction over Defendants. To be entitled to jurisdictional discovery, a plaintiff must first make a *prima facie* or colorable showing of personal jurisdiction. *Sheehan v. Breccia Unlimited Co.*, 48 F.4th 513, 526 (7th Cir. 2022). Courts generally grant jurisdictional discovery if "the factual record is at least ambiguous or unclear on the jurisdiction issue," but such discovery will be denied if the plaintiff only offers "bare, attenuated, or unsupported assertions of personal jurisdiction." *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 U.S. Dist. LEXIS 41548, at *21–22 (N.D. Ill. Mar. 28, 2014). Indeed, when the record is clear, jurisdictional discovery is unnecessary. *Medline Indus. v. Diversey, Inc.*, No. 20-C-4424, 2020 U.S. Dist. LEXIS 177579, at *13 (N.D. Ill. Sept. 28, 2020).

In this case, Arslani seeks to conduct jurisdictional discovery into "Abridge's Illinois office, workforce, Illinois-directed activity, and the extent to which healthcare organizations Plaintiff serviced under the Health Check program

between January 2020 and August 2021 have since become Abridge customers." Dkt. 29 at 14. Yet Abridge offered no evidence that contradicted Arslani's account of its suit-related contacts, so the record is sufficiently clear for the Court to rule on the jurisdictional issue and such discovery is unnecessary. Accordingly, the Court denies Arslani's request.

## III. Abridge's Rule 12(b)(6) Motion to Dismiss

Abridge, as the remaining defendant in this action, moves for dismissal under Rule 12(b)(6).

### a. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Id.* at 558. Although the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). *Pro se* complaints are interpreted liberally. *Sause v. Bauer*, 585 U.S. 957, 960 (2018).

**b. Count I: DTSA**

To begin, Abridge contends that Arslani's DTSA claim is barred by the statute of limitations.

***i. Statute of Limitations***

As this Court has mentioned before, district courts are on thin ice when they grant Rule 12(b)(6) motions to dismiss based on any affirmative defense, including statutes of limitations. *Betts v. Wigget*, 756 F. Supp. 3d 551, 557 (N.D. Ill. 2024). For years, the Seventh Circuit has warned district courts to be wary of engaging in this practice. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)."); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("[W]e have repeatedly cautioned" not to use Rule 12(b)(6) to dismiss actions based on the statute of limitations.). Indeed, these types of dismissals are "irregular" and "an unusual step." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004); *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009).

Ideally, rather than moving to dismiss under Rule 12(b)(6) based on a statute of limitations defense, the movant should answer and file a Rule 12(c) motion or, alternatively, move for summary judgment. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020); *Richards*, 696 F.3d at 638; *Brownmark Films*, 682 F.3d at 690. There are exceptional cases, however, where courts will grant a 12(b)(6) motion based on an affirmative defense, but only in the rare situation when the plaintiff pleads himself

out of court by including an allegation that "plainly reveals that an action is untimely." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). But "[r]arely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022).

With these principles in mind, the Court addresses whether this case is an exceptional one that justifies granting Abridge's 12(b)(6) motion based on its statute of limitations defense.

The DTSA's statute of limitations is three years and begins when the plaintiff discovers the alleged misappropriation or should have discovered it by the exercise of reasonable diligence. 18 U.S.C. § 1836(d). To trigger the statute of limitations, a plaintiff doesn't need to realize that his injury is actionable in court—it is enough that the plaintiff is aware of the existence of the injury. *Cancer Found.*, 559 F.3d at 674. Under the DTSA, "a continuing misappropriation constitutes a single claim of misappropriation," 18 U.S.C. § 1836(d), so each subsequent or continued use of a misappropriated trade secret doesn't restart the clock. Therefore, Arslani's clock began to run when he knew or should have known that his alleged trade secrets

were wrongfully acquired, disclosed, or used. 18 U.S.C. § 1839(5); *see Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010).

In this case, Abridge argues that Arslani's allegations in the First Amended Complaint establish his DTSA claim as untimely. It points out that Arslani pleads that Abridge first gained access to his trade secrets back in 2019. Dkt. 34 at 7. Further, it also highlights Arslani's allegations that Ricci became familiar with his work between 2010 and 2018 and later collaborated with UPMC to create the "institutional knowledge base that later gave rise to Abridge." *Id.* According to Abridge, these allegations show that this 2026 action was filed "at least four years too late." *Id.*

Abridge's argument would be more convincing if the limitations clock began to run immediately once the misappropriation took place. But, as mentioned above, the clock doesn't start until Arslani discovered or should've discovered the misappropriation. And drawing all reasonable inferences in Arslani's favor, he didn't learn that Abridge acquired and used his methodologies until 2025, when he discovered that Conant was employed by Abridge. Dkt. 7 at ¶ 53; Dkt. 29 at 3.

Abridge seems to argue that because Arslani alleges the misappropriation took place between 2010 and 2019, he must have known about it at that time, triggering the limitations clock. That argument doesn't track. Arslani may allege that misappropriation occurred at a particular time without also admitting that he knew about it at that time. *See Ward v. Avaya*, 487 F. Supp. 2d 467, 475 (D.N.J. 2007) ("The mere allegation by Plaintiff that an event took place on a certain date

does not establish that Plaintiff had knowledge of the event on that same date."). In fact, the First Amended Complaint contains no allegations about when Arslani learned of these events. Arslani simply alleges that these acts of misappropriation took place between 2010 and 2019, not that he learned about them at that time.

Further, Abridge offers no basis for when, how, or why Arslani reasonably should have discovered the alleged misappropriation earlier. And Arslani alleges that "the systems at issue involve back-end architectures not visible through public interfaces," Dkt. 7 at ¶ 53, so it's unclear how Arslani could've discovered that Abridge was using his methodologies before learning about Conant's employment and putting the pieces together himself.

In short, none of the allegations in the First Amended Complaint plainly show that Arslani knew that Abridge had acquired and used his methodologies more than four years before he filed this action. Dismissing Arslani's DTSA claim against Abridge on statute of limitations grounds isn't warranted at this stage.

***ii. Trade Secret Ownership***

Abridge contends that Arslani hasn't sufficiently alleged that he has an ownership interest in the trade secrets at issue, and thus he hasn't stated a claim under the DTSA.

Indeed, the DTSA permits only an "owner" of a trade secret to bring a claim for misappropriation of that trade secret. 18 U.S.C. 1836(b)(1). The DTSA defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. 1839(4). As an essential

element of a DTSA claim, a plaintiff must plausibly allege an ownership interest in the trade secret at issue. *See Xttrium Lab'ys, Inc. v. Chakroborty*, 829 F. Supp. 3d 411, 420 (N.D. Ill. 2025); *GTY Tech. Holdings, Inc. v. Wonderware, Inc.*, No. 24-CV-9069, 2025 U.S. Dist. LEXIS 96809, at *27 (N.D. Ill. May 21, 2025).

To support its argument, Abridge points to attestations that Arslani apparently made in both his consulting and employment agreements with CAIS. Dkt. 34 at 9. According to Abridge, Arslani admitted in these attestations that he "had no prior inventions relevant to his employment at CAIS and had no inventions or trade secrets at the time of his departure." Dkt. 27-1 at 12. Abridge now requests that the Court take judicial notice of these agreements, arguing that they require dismissal because they show "[e]ither the alleged trade secrets did not exist when Arslani joined CAIS, or Arslani disclaimed any ownership interest in them." *Id.* In response, Arslani argues that those agreements concerned only inventions "relevant to his employment with CAIS" and that resolving the question of whether his trade secrets fall within the scope of those agreements is inappropriate at this stage. Dkt. 29 at 10.

The Court's inquiry at this stage is confined to "the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Neither the consulting agreement nor the employment agreement are referenced in the First

Amended Complaint. *See* dkt. 7. Therefore, the Court may only consider them if they are properly subject to judicial notice.

But taking judicial notice of these agreements wouldn't necessarily lead the Court to dismiss Arslani's claims. Courts may take judicial notice of facts that are not subject to reasonable dispute because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Courts take notice, however, "for the purpose of showing what statements the documents contain, but not for the proof of the facts stated therein." *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009); *Erwin v. Veradigm Inc.*, No. 23-CV-16205, 2026 U.S. Dist. LEXIS 184824, at *17 (N.D. Ill. Aug. 18, 2026) ("The Court will take judicial notice only of the content of the documents; it will not consider the content for the proof of any matter asserted."). In this case, because the Court can't take judicial notice of the truth of any statements in the agreements, the agreements don't show that Arslani lacks an ownership interest in his alleged trade secrets.

In addition to its judicial notice argument, Abridge also contends that Arslani fails to allege any facts showing that he owned the trade secrets. Dkt. 34 at 8. Arslani only briefly responds to this point, stating that his "priority claim to this architecture" is evidenced by a 2014 article he authored that "describ[es] a next-generation health record that would 'incorporate real-time audio and video capture

of the patient care encounter.'" Dkt. 29 at 11. Further, the First Amended Complaint repeatedly refers to the trade secrets as "*Plaintiff's*" methodologies, "*Plaintiff's*" frameworks, and "*his* concepts." Dkt. 7 at ¶¶ 18, 21, 22, 26, 32–38, 45, 56, 57 (emphasis added).

Although Arslani doesn't frame his ownership of the trade secrets in legal terms, he has sufficiently alleged that he owns them at this stage. *Cf. BLK Enters., LLC v. Unix Packaging, Inc.*, No. 18-CV-02151, 2018 U.S. Dist. LEXIS 239521, at *13 (C.D. Cal. June 14, 2018) (plaintiff plausibly alleged ownership of trade secrets by repeatedly referring to them as "*its* trade secrets" in the complaint) (emphasis added). Abridge doesn't cite any authority suggesting that Arslani must provide more than what he has to survive a motion to dismiss. Further, courts typically only dismiss DTSA claims on this basis if the plaintiff pleads that the trade secrets are owned by another entity or if there is evidence properly before the court showing that the plaintiff transferred his ownership interest to another entity. *See e.g.*, *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 208 F. Supp. 3d 1193, 1201 (D. Utah 2016) (plaintiff transferred all ownership rights to defendant through agreement); *Reis v. Tavant Techs., Inc.*, No. 19-CV-609, 2019 U.S. Dist. LEXIS 192193, at *10 (S.D. Cal. Nov. 5, 2019) (plaintiff referred to trades secrets as belonging to another entity in complaint); *First Tech. Fed. Credit Union v. LPL Fin., LLC*, No. 25-CV-582, 2026 U.S. Dist. LEXIS 216987, at *12 (D. Idaho Sept. 22, 2026) (plaintiff's employment agreement designated the trade secrets as proprietary information of another entity).

At this stage, Arslani's allegations of ownership are sufficient to survive this motion.

#### ***iii. Existence of a Trade Secret***

Abridge also contends that Arslani hasn't alleged enough facts to plausibly suggest that a trade secret exists. Indeed, he must do so to state a claim under the DTSA. *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613 (N.D. Ill. 2023). Here's how the DTSA defines "trade secret":

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]

18 U.S.C. § 1839. Further, information qualifies as a trade secret only if: "(1) the owner has taken 'reasonable measures' to keep it secret, and (2) the information derives independent value from the fact that it is not generally known and not readily ascertainable." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1096 (7th Cir. 2026) (paraphrasing 18 U.S.C. § 1839(3)).

Abridge advances several arguments that Arslani hasn't plausibly alleged that a trade secret exists. First, it argues that Arslani failed to describe the trade secrets with enough specificity to state a claim.

Trade secrets "need not be disclosed in detail" at the pleading stage "for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001). Instead, a plaintiff need only "describe trade secret information in

general terms." *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831 (N.D. Ill. 2019). "Courts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011).

In this case, Abridge argues that Arslani's allegations are insufficient because they are "exactly the kind of undefined, jargon-laden generalizations that courts have held insufficient to state a claim." Dkt. 27 at 10. The First Amended Complaint alleges that the trade secrets include: "core system architectures, including encounter capture, clinical speech processing, contextual workflow integration, and structured documentation generation pipelines, wherein audio inputs were captured and processed through structured workflows, including speech recognition and human-in-the-loop transcription, and converted into clinical documentation mapped EMR fields." Dkt. 7 at ¶ 6.

Considering the generous pleading standard, these descriptions are sufficient to give Abridge notice of the trade secrets Arslani alleges it misappropriated. Arslani has identified the trade secrets at issue and how they work in general terms. *See Sonrai Sys.*, 658 F. Supp. 3d at 614 (plaintiff's identification of trade secrets as "event validation systems" that "establishes a computer based visual confirmation that the waste hauling service has been completed" was sufficient); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921–22 (N.D. Ill. 2016) ("a method for collecting standardized data," "software design specifications," and "impact reports and analytics" sufficed); *GoHealth LLC v.*

*Simpson*, No. 13-C-02334, 2013 U.S. Dist. LEXIS 167416, at *49 (N.D. Ill. Nov. 26, 2013) ("processes, systems, and technology" that made it easier to "generate more and quicker responses" was sufficient). At this stage, the Court finds that Arslani identified his trade secrets with enough specificity to avoid dismissal on this basis.

Second, Abridge contends that Arslani failed to allege any facts showing that he took reasonable measures to maintain secrecy, or that his alleged trade secrets derived economic value from their secrecy. Abridge believes these deficiencies require dismissal. With respect to measures to maintain secrecy, the Court agrees.

Although a plaintiff need only plead economic value and measures to maintain secrecy "in general terms," *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014), this standard "does not give plaintiffs license to allege the existence of a trade secret in a conclusory manner." *Smietana v. Stephens*, No. 22-C-708, 2024 U.S. Dist. LEXIS 38717, at *18–19 (N.D. Ill. Mar. 5, 2024).

In this case, the First Amended Complaint recites the DTSA's elements, Dkt. 7 at ¶ 56, but it doesn't include enough facts to plausibly suggest Arslani took reasonable measures to maintain secrecy. Arslani points to no measures besides a vague suggestion that Nuance was "under confidentiality conditions" with respect to the systems he was developing. Dkt. 7 at ¶¶ 18, 26. As a matter of comparison, courts allow claims to proceed in cases when plaintiffs allege that they maintained secrecy through physical security measures, need-to-know access restrictions, or confidentiality agreements paired with additional efforts. *Sonrai Sys.*, 658 F. Supp. at 617; *see also Covenant Aviation*, 15 F. Supp. 3d at 818 (allegations of "specific

efforts" taken to protect business information are sufficient). Arslani's generalized reference to confidentiality isn't enough to plausibly allege that he took reasonable measures to maintain secrecy. *Fire 'Em Up*, 799 F. Supp. 2d at 851; *Inv. Sci., LLC v. Oath Holdings Inc.*, 20-Civ.-8159, 2021 U.S. Dist. LEXIS 151076, at *9 (S.D.N.Y. Aug. 11, 2021) ("Simply reciting that information is confidential, without alleging any other facts to support the confidential nature of the information or the measures taken to protect such information, is inadequate.").

Further, the DTSA explicitly requires "the *owner*" of the trade secret to have taken reasonable measures to maintain its secrecy. 18 U.S.C. § 1839(3)(A) (emphasis added). Therefore, to the extent that Arslani argues that his complaint satisfies this element because Nuance implemented confidentiality measures, it does so only by suggesting that Nuance is the true owner of the trade secrets. So, Arslani has either failed to allege reasonable measures to maintain secrecy, or he has admitted that he isn't the owner of the trade secrets. Either way, he fails to state a claim under the DTSA.

In an apparent effort to cure this deficiency, Arslani submitted an exhibit that he says contains a Nuance internal case study of his work that is purportedly marked as "CONFIDENTIAL." Dkt. 29 at 10 (citing dkt. 30-1, Exhibit H). But, as Abridge points out, Arslani's Exhibit H contains two slideshows titled "Nuance Healthcare Overview" and "Driving Change Through Value Creation with Dragon Medical Speech to Text Recognition," neither of which is marked as confidential. Dkt. 30-1, Exhibit H. And even if these slideshows contained confidentiality notices,

they wouldn't cure Arslani's failure to plead reasonable measures to maintain secrecy for the same reasons stated above.

To be sure, the reasonableness of the measures taken to maintain secrecy is usually a question of fact for the jury. *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003). But plaintiffs "must allege that they took such measures in the first place." *Smietana v. Stephens*, No. 22-C-708, 2024 U.S. Dist. LEXIS 38717, at *21 (N.D. Ill. Mar. 5, 2024) (citing *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 180 (7th Cir. 1991)).

Abridge also argues that Arslani alleges that he publicly disclosed his concepts on several different occasions, destroying any secrecy. Specifically, Arslani pleads that he presented his work at Nuance conferences, during which Ricci first acquired his concepts. Dkt. 7 at ¶ 25. He also "publicly documented these concepts in a published article." *Id.* at ¶ 21. Indeed, if Arslani disclosed his trade secrets to members of the public under no obligation to maintain their secrecy, he has no claim. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

Arslani, however, disputes that these disclosures included the specific trade secrets at issue and contends that the Court cannot resolve this factual dispute at this stage. Dkt. 29 at 10. Indeed, the Court cannot resolve factual disputes at the pleading stage, so it cannot determine whether Arslani's disclosures included his trade secrets. Abridge's argument that those disclosures foreclose his DTSA claim therefore fails.

Moving to economic value, Arslani's First Amended Complaint is mostly a recitation of the DTSA's elements. Dkt. 7 at ¶ 56. Still, he alleges that his methodologies "were deployed at over 40 healthcare organizations" and "generat[ed] millions in consulting revenue." *Id.* at ¶ 35. Drawing all reasonable inferences in his favor, Arslani could plausibly gain a strategic advantage over competitors by maintaining the secrecy of his methodologies.

Abridge argues that Arslani publicly disclosed his methodologies and thus cannot plausibly allege that they derive any commercial value from secrecy, citing *Sirius Comput. Sols., Inc. v. Sachs*, No. 20-CV-1432, 2021 U.S. Dist. LEXIS 77595 (N.D. Ill. Apr. 22, 2021). But in *Sirius*, the trade secret was publicly available through LinkedIn and the business's website. *Id.* at *10. Accordingly, the court held that the plaintiff couldn't allege that the list derived commercial value from its secrecy because it was "generally known or readily ascertainable." *Id.* But as mentioned above, the Court cannot determine whether Arslani made his trade secrets available to the public on the current record.

Ultimately, because Arslani fails to allege sufficient facts showing that he took reasonable measures to protect the secrecy of his methodologies, he fails to state a claim under the DTSA. Count I is dismissed.

**c. Count II: Unjust Enrichment**

Next, Abridge seeks to dismiss Arslani's unjust enrichment claim, arguing that the DTSA preempts it. To state a claim for unjust enrichment under Illinois

law,[3] "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) (cleaned up). Unjust enrichment is an equitable remedy that is only available when there is no adequate remedy at law. *Id.*

In support of its argument that the DTSA preempts Arslani's unjust enrichment claim, Abridge relies on *Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005). But *Hecny* involved claims under the Illinois Trade Secret Act (ITSA), not the DTSA. *Id.* at 404–05. And by its own terms, the DTSA doesn't preempt Arslani's unjust enrichment claim. *See* 18 U.S.C. § 1838 (the DTSA "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret."). So, Abridge's argument that the DTSA preempts Arslani's unjust enrichment claim is unavailing.

Yet, as *Hecny* holds, the ITSA does preempt Illinois common law claims that rest on trade secret misappropriation. *Hecny*, 430 F.3d at 404–05; 765 Ill. Comp. Stat. 1065/8 (the ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.").

---

[3] Arslani fails to identify which state's law he brings this claim under and neither party discusses which law applies. So, the Court applies Illinois law. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

As mentioned above, Arslani's unjust enrichment claim is based on Abridge's alleged misappropriation of his trade secrets. Therefore, although the DTSA doesn't preempt Arslani's unjust enrichment claim, the ITSA does. Count II is dismissed.

**d. Count III: Declaratory Judgment**

Lastly, Abridge asserts that Arslani's Declaratory Judgment claim must be dismissed because Abridge hasn't "claimed any competing interest against Arslani" and thus no "actual controversy" exists. Dkt. 34 at 14.

Arslani seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that he is the original conceiver and developer of the trade secrets at issue. Under the Act, a party to an "actual controversy" can seek a declaration of its rights. 28 U.S.C. § 2201(a); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Although Abridge says that it disclaims any competing interest in Arslani's trade secrets, Arslani alleges that Abridge markets them publicly as independently developed. Dkt. 7 at ¶ 2. Because Arslani asserts ownership of those same trade secrets, an actual controversy exists and Abridge's argument fails.

But the Declaratory Judgment Act provides only a remedy—it doesn't create an independent cause of action. *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021). Count III is thus dismissed as a separate cause of action, but this dismissal shouldn't be construed to preclude Arslani from seeking declaratory relief against Abridge under an appropriate cause of action.

## IV. Leave to Amend

Rule 15(a)(2) instructs district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, after granting a motion to dismiss, a court should grant leave to amend, unless doing so would be futile or unwarranted. *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 347 (7th Cir. 2018). "The law is clear that a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). "But those instances are the clear exception; the norm remains affording a plaintiff at least one opportunity to amend his complaint." *Id.* "As a best practice, only after receiving full briefing on the issue should a district court deny a party's motion to supplement a complaint based on futility." *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 979 (7th Cir. 2025).

In his opposition brief, Arslani sought leave to file an amended complaint. He didn't file a motion under Rule 15 and attach the proposed pleading. No doubt, that procedure is best practice and one that courts can rightfully require. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006); *Dynasty Int'l LLC v. Lexington Ins. Co.*, Case No. 2:15-CV-374 JD, 2016 U.S. Dist. LEXIS 78443, at *15 (N.D. Ind. June 16, 2016) ("A motion to amend a complaint, however, must be filed separately, rather than incorporated into a response to a motion to dismiss."); *see also* Fed. R. Civ. P. 7(b).

Yet courts have discretion to require compliance with this best practice. *In re Allergan ERISA Litig.*, 975 F.3d 348, 358 n.16 (3d Cir. 2020); *McLaughlin v.*

*Anderson*, 962 F.2d 187, 195 (2d Cir. 1992). The Court exercises its discretion to excuse Arslani from filing a Rule 15 motion with an attached proposed pleading, particularly because he is a self-represented litigant. *See, e.g.*, *Harris v. Meves*, No. 18-CV-1176, 2020 U.S. Dist. LEXIS 20842, at *3 n.1 (E.D. Wis. Feb. 6, 2020); *Cherry v. Wash. County Seriff's Dep't.*, No. 11-C-1021, 2012 U.S. Dist. LEXIS 10268, at *2 (E.D. Wis. Jan. 30, 2012).

Finally, granting leave to amend wouldn't be futile, because Arslani could cure the defects in his DTSA claim by alleging measures he took to maintain the secrecy of his methodologies. *See Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Arslani's request for leave to amend his First Amended Complaint is granted.

## V. Conclusion

For these reasons, Abridge's Rule 12(b)(2) motion to dismiss [27] is denied and Ricci's Rule 12(b)(2) motion [27] is granted. Ricci is terminated from this case. Arslani's request for jurisdictional discovery [29] is denied. Abridge's Rule 12(b)(6) motion to dismiss [27] is granted without prejudice. Arslani's request for leave to file an amended complaint [29] is granted. Any amended complaint must be filed by November 23, 2026.

Entered: October 30, 2026

By: ______________________
Iain D. Johnston
U.S. District Judge